UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANN MARIE BOLTZ,

                        Plaintiff,

                                                                                                Case # 15-CV-00587-FPG

v.

                                                                                               DECISION AND ORDER

NANCY A. BERRYHILL,[1] ACTING
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

Ann Marie Boltz ("Boltz" or "Plaintiff") brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner") that denied her application for disability insurance benefits ("DIB"). ECF No. 1. This Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. ECF Nos. 10, 12. For the reasons that follow, the Plaintiff's motion is DENIED and Commissioner's motion is GRANTED.

## BACKGROUND

On July 17, 2012, Boltz protectively filed an application for DIB with the Social Security Administration ("the SSA"). Tr.[2] 144-50. She alleged that she had been disabled since October 24, 2011, due to fibromyalgia, ulcerative colitis, restless leg syndrome, and cardiac impairment. Tr. 163. After her application was denied at the initial administrative level, a hearing was held before Administrative Law Judge Donald T. McDougall ("the ALJ") on December 6, 2013, in

---

[1]    Acting Commissioner Berryhill is substituted for Carolyn W. Colvin as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).
[2]    References to "Tr." are to the administrative record in this matter.

which the ALJ considered Boltz's application *de novo*.  Tr. 21-32, 100.  Boltz appeared at the hearing with her attorney and testified.  Tr. 41-70.  Josiah L. Pearson, an impartial Vocational Expert ("VE"), also testified.  Tr. 70-78.  On February 14, 2014, the ALJ issued a decision finding that Boltz was not disabled within the meaning of the Act.  Tr. 21-32.  That decision became the Commissioner's final decision when the Appeals Council denied Botlz's request for review on May 7, 2015.  Tr. 1-4.  Thereafter, Boltz commenced this action seeking review of the Commissioner's final decision.  ECF No. 1.

## LEGAL STANDARD

### I.  District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted).  It is not this Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."  *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014); *see also Veino v. Barnhart*, 312

F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").

**II.     Disability Determination**

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f). The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis

proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

**I.   The ALJ's Decision**

The ALJ's decision analyzed Boltz's claim for benefits under the process described above. Tr. 21-32. At step one, the ALJ found that Boltz had not engaged in substantial gainful activity since October 24, 2011, the alleged onset date. Tr. 23-24. At step two, the ALJ found that Boltz had the following severe impairments: fibromyalgia and obesity. Tr. 24-26. At step three, the ALJ found that the record lacked sufficient evidence to establish that Boltz's obesity met the severity criteria required by a listing. Tr. 26. The ALJ also found that "no treating, examining, or non-examining medical source has documented findings or rendered an opinion that the claimant's fibromyalgia, individually or in combination with any medically determinable impairment, medically equals the severity requirements of any listed impairment." *Id.*

Next, the ALJ determined that Boltz has the RFC to perform less than the full range of sedentary work.[3] Tr. 26-31. More specifically, the ALJ determined that Boltz "can lift and/or carry up to 10 pounds occasionally, push and/or pull up to 10 pounds occasionally, sit for up to six hours in an eight-hour workday, and stand and/or walk for up to two hours in an eight-hour

---

[3]   "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

workday." Tr. 26.  The ALJ further determined that Boltz "requires the opportunity to change between sitting and standing positions for one-to-two minutes every hour."  *Id*.  The ALJ also found that Boltz "can perform no more than frequent lifting of any weight with her arms, and cannot reach overhead.  She can never kneel and can bend no more than occasionally, with no bending of any sort at an angle more than 45 degrees of the spine."  *Id*.

At step four, the ALJ assigned great weight to the testimony of consultative examiner, Dr. Hongbioa Liu, M.D., ("Dr. Liu") and the testimony of the VE and found that Boltz is capable of performing her past relevant work as a Programmer-Analyst and Computer Programmer.  Tr. 28, 31.  Accordingly, the ALJ concluded that, from October 24, 2011, through the date of his decision, Boltz was "not disabled" under the Act.  Tr. 32.

## II.   Analysis

Boltz asserts two challenges to the ALJ's determination that Plaintiff is not disabled under the Act.  First, Boltz argues that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ erroneously gave "great weight" to the opinion of Dr. Liu.  ECF No. 10-1, at 15-17.  Boltz asserts that Dr. Liu's opinion that Plaintiff would have "mild to moderate limitations in routine activities" was *too vague* to constitute substantial evidence.  *Id.*  Second, Boltz argues that the ALJ failed to properly evaluate the evidence in light of Boltz's diagnosis of fibromyalgia.  *Id*. at 17-21.  The Commissioner maintains that the ALJ's decision that Boltz is not disabled under the Act is supported by substantial evidence.  ECF No. 12-1, at 6-15.  The Commissioner asserts that the ALJ properly afforded great weight to Dr. Liu's opinion.  *Id*. at 9-11.  In addition, the Commissioner contends that the ALJ fully considered Boltz's fibromyalgia in reaching his determination.  *Id*. at 11-15.  These arguments are addressed below.

### A.     Dr. Liu's Opinion

Boltz argues that the ALJ, in determining that Boltz is "capable of performing sedentary work with limitations," erred in giving great weight to the opinion of Dr. Liu. ECF No. 10-1, at 15. Boltz contends that Dr. Liu's medical source statement that Boltz would have "mild to moderate limitations in routine activities" lacks specificity as to what activities may be limited. *Id.* at 15-17. Boltz asserts that because Dr. Liu's opinion is "subject to broad interpretation, it is too vague to constitute substantial evidence." *Id.* at 17. The Court disagrees.

On August 23, 2012, Dr. Liu conducted an internal medical examination of Plaintiff. Based upon Dr. Liu's physical examination, as well as Boltz's complaints noted in Dr. Liu's report, Dr. Liu provided the following medical source statement: "[T]he claimant has mild to moderate limitation for her routine activities. The claimant should try to avoid lifting, carrying with the arms, bending, kneeling, and overhead reaching." Tr. 464. During the physical examination, Dr. Liu indicated that Boltz, "appeared to be in no acute distress." *Id.* Her gait and stance were both normal. *Id.* She could not walk on heels and toes without difficulty and could not perform a squat. Boltz could, however, get changed for the exam without assistance, get on and off the exam table without assistance, and rise from a chair without difficulty. *Id.* With regard to Boltz's daily activites, Dr. Liu reported that Boltz can cook. *Id.* She can clean the house twice a week, shop once a week, and take a shower three to four times a week. *Id.* Boltz also stated that she likes to watch TV, read books, and socialize with friends. *Id.* The ALJ assigned "great weight" to Dr. Liu's assessment of the claimant's functioning since it is based on the examiner's direct observations of the claimant, the examiner's programmatic expertise, and reinforced by objective findings throughout the record." Tr. 28.

The Court finds that the ALJ did not err in assigning "great weight" to Dr. Liu's opinion. When determining how much weight a medical opinion should receive, the ALJ must consider: (1) whether the source of a medical opinion has examined the claimant; (2) the length, frequency, nature and extent of the treatment relationship; (3) the quantity and quality of relevant evidence provided in support of a medical opinion; (4) whether a medical opinion is consistent with the record as a whole; (5) whether the medical source is a specialist offering an opinion related to his/her area of specialty; and (6) other relevant factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c).

Dr. Liu's opinion was also supported by Dr. Liu's own physical examination. *See* 20 C.F.R. § 416.927(c)(1) ("Generally we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."); *see also Collier v. Colvin*, No. 15-CV-230-FPG, 2016 WL 4400313, at *4 (W.D.N.Y. Aug. 17, 2016); *Smith v. Colvin*, 17 F. Supp. 3d 260, 268 (W.D.N.Y. 2014); *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 348 (E.D.N.Y. 2010) (quoting *Vargas v. Sullivan*, 898 F.2d 293, 295-96 (2d Cir. 1990) ("Medical reports that are not based on personal observation 'deserve little weight in the overall evaluation of disability.'"); *Filocomo v. Chater*, 944 F. Supp. 165, 170 n.4 (E.D.N.Y. 1996) (reliance on RFC assessment completed by a doctor who never conducted a physical examination of the Plaintiff would be "unfounded, as the conclusions of a physician who merely reviews a medical file and performs no examination are entitled to little if any weight").

Dr. Liu's opinion was consistent with the medical record as a whole. To determine whether a claimant is disabled, medical opinions in the case record must be considered together with the rest of the relevant evidence received. 20 C.F.R. § 404.1527(b). SSA regulations require the ALJ to evaluate every medical opinion in the record. 20 C.F.R. § 404.1527(c). In

addition, "when reviewing the medical evidence, the ALJ has the authority to select among conflicting opinions." *Id.; see also Pines v. Comm'r of Soc. Sec.*, No. 13-cv-6850-AJN-FM, 2015 WL 872105, at *3 (S.D.N.Y. Mar. 2, 2015).

In determining that Plaintiff was capable of sedentary work, with limitations, the ALJ relied on treatment notes from many physicians— including Plaintiff's primary care physician, Dr. O'Keeffe; rheumatologist Sadia Ahmed, M.D., neurologist Bennett Myers, M.D., physiatrist Bernard Beaupin, M.D., treating surgeon Dr. Steinig, and physician Dr. Varavenkataraman. Tr. 26-29. The ALJ was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *see also Suppa v. Colvin*, No. 15-CV-55S, 2016 WL 6067847, at *3 (W.D.N.Y. Oct. 17, 2016). With the exception of Dr. Varavenkataraman's Fuctional Capacity Assessment,[4] none of the treating physicians attributed any functional limitations to Plaintiff's obesity or fibromyalgia that are inconsistent with the ALJ's RFC determination that Plaintiff is capable of performing sedentary work with additional postural restrictions.

In addition, Dr. Liu's medical source statement was not so vague that it could not serve as an adequate basis for determining Boltz's ability to perform sedentary work. *See Collier*, 2016 WL 4400313, at *3 (finding that the consultative examiner's use of the term "moderate" in

---

[4] The record indicates that Plaintiff was seen by Dr. Varavenkataraman twice during relevant period. A report on an annual physical dated October 20, 2013, does not include narrative findings. With regard to Boltz's fibromyalgia, Dr. Varavenkataraman's report states that Boltz should "continue same meds." Tr. 601. With regard to Boltz's diagnosis of obesity, the report indicates that Dr. Varvenaktaraman "advised diet and exercise." *Id*. Boltz was seen again by Dr. Varavenkataraman on November 19, 2013, for fibromyalgia follow-up and for Dr. Varavenkataraman to fill out the Functional Capacity Form. *Id*. at 602-03. The report for this appointment also lacks narrative findings that support Dr. Varavenkataraman's restrictive Functional Capacity Assessment. Boltz was again advised to "continue same meds" for treatment of her fibromyalgia. *Id*. at 603. The report contains no additional comments. The Second Circuit has stated that an ALJ does not need to give controlling weight to the medical opinion of a treating source where the Court can "conclude that the ALJ applied the substance of the treating physician rule . . . and provided[d] 'good reasons' for the weight she gives to the treating source's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *see also Augustine v. Comm'r of Soc. Sec.*, No. 6:15-CV-06145_EAW, 2016 WL 5462836, at *16 (W.D.N.Y. Sept. 28, 2016). The Court finds that the ALJ stated a sufficient reason for his determination to accord little weight to Dr. Varavenkataraman's opinion.

describing the claimant's limitations was not too vague because it was supported by an objective physical examination and because the consultative examiner's medical source statement was not uselessly vague); *see also Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013) (finding the consultative examiner's opinion "remarkably vague" where he opined that the claimant "should be able to lift . . . objects of a mild degree of weight on an intermittent basis"); *Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000) (finding that, without additional information, the use of the terms "mild" and "moderate" in the consulting physician's opinion that the claimant's "impairment is: [l]ifting and carrying moderate; standing and walking, pushing and pulling and sitting mild" was uselessly vague), *superceded by statute on other grounds*, 20 C.F.R. § 404.1560(c)(2); *Hilsdorf*, 724 F. Supp. 2d at 347-48 (finding that the consultative examiners' opinion that the plaintiff had "limitations of a mild degree of lifting, bending, walking, standing, and pushing and pulling on arm controls" was "syntactically unclear" and therefore, too vague to support the RFC determination that the plaintiff could perform light to sedentary).  Unlike the consultative examiners' opinions in *Selian*, *Curry*, and *Hilsdorf*, Dr. Liu's opinion that Boltz would have "mild to moderate limitations in routine activities" was immediately followed by the specific opinion that Boltz "should avoid lifting and carrying with her arms, in addition to overhead reaching, bending, and kneeling."

      Based on all of the objective medical evidence set forth in Dr. Liu's report, as well as Dr. Liu's medical source statement, the Court finds that the ALJ properly relied on Dr. Liu's opinion.  When viewed alongside the record as a whole, Dr. Liu's opinion constituted substantial evidence in support of the ALJ's RFC determination. Accordingly, for the reasons stated, the ALJ properly evaluated Dr. Liu's opinion and gave appropriate reasons for the weight assigned to that opinion.

### B. Plaintiff's Fibromyalgia

Boltz asserts that the ALJ did not properly evaluate the evidence in light of Boltz's fibromyalgia diagnosis. ECF No. 10-1, at 21. Boltz argues that "the ALJ's credibility determination and weighing of the medical opinions needed to be influenced by this diagnosis." *Id.* at 17. Boltz further asserts that the ALJ misinterpreted medical evidence that is supportive of Boltz's subjective complaints. *Id.* at 19-21. The Commissioner contends that the ALJ properly considered Boltz's fibromyalgia and appropriately accounted for any limitations due to fibromyalgia in the ALJ's RFC determination. ECF No. 12-1, at 11.

Courts generally recognize that fibromyalgia is a disabling impairment and that "there are no objective tests which can confirm the disease." *Green-Youger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (quoting *Preston v. Sec. of Health and Human Servs.*, 854 F.2d 815, 818 (6th Cir. 1988). "[M]ere diagnosis of fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability." *Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008); *Green-Younger*, 335 F.3d at 104. The ALJ here found that, while Boltz has fibromyalgia, her diagnosis did not rise to the level of a disability, as defined in the SSA.

At step two of the disability determination, the ALJ determined that Boltz has fibromyalgia, which causes "more than minimal limitations in the claimant's ability to perform basic work activities" and is therefore considered a severe impairment under the SSA. Tr. 24. The ALJ further determined that "pursuant to SSR 12-2p *Evaluation of Fibromyalgia*, no treating, examining, or non-examining medical source has documented findings or rendered an opinion that the claimant's fibromyalgia, individually or in combination with any other medically determinable impairment, medically equals the severity requirements of any listed impairment." *Id.* at 26. With respect to Boltz's fibromyalgia, the ALJ considered Boltz's

testimony, as well as medical evidence in the record from Drs. O'Keeffe, Ahmed, Myers, Liu, Steinig, and Varavenkataraman in determining that the overall record does not support the severity of Boltz's allegations of disability with regard to her fibromyalgia. *Id.* at 27-30.

Social Security regulations require a two-step process for considering a claimant's symptoms. First, the ALJ considers whether there is an impairment "which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of [a claimant's] pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that [a claimant is] disabled." 20 C.F.R. § 404.1529(a). Second, where an impairment is shown, the ALJ must evaluate the "intensity, persistence, or functionally limiting effects" of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. 20 C.F.R. § 404.1529(b). "When the objective medical evidence alone does not substantiate the claimant's alleged symptoms, the ALJ must assess the credibility of the claimant's statements considering the details of the case record as a whole." *Scitney v. Colvin*, 41 F. Supp. 3d 289, 303-04 (W.D.N.Y. 2014) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vii)).

The sole evidence in the record of this case that contradicts the ALJ's RFC determination that Boltz is capable of performing sedentary work with additional limitations is the Functional Capacity Assessment of Dr. Varavenkataraman, a physician Boltz saw twice during the relevant period, and Boltz's own allegations. As noted previously, an ALJ who fails to give controlling weight to the medical opinion of a treating physician must consider various factors to determine how much weight to give to the opinion. 20 C.F.R. § 404.1527(d)(2); *see also Scitney*, 41 F. Supp. 3d at 301 (quoting *Halloran v. Barnhart,* 362 F.3d 28, 32 (2d Cir.2004)). The ALJ stated

that he accorded little weight to Dr. Varavenkatarman's opinion because Dr. Varavenkataraman did not provide clinical findings in support of his assessment. Tr. 29. The ALJ also found Dr. Varavenkataraman's assessment unsupported by the evidence throughout the record, including Boltz's own testimony. Indeed, treatment reports from both of Boltz's visits to Dr. Varavenkataraman lack narrative findings, other than the direction that Boltz should "continue same meds." This fails to explain Dr. Varavenkatarman's highly restrictive assessment. *See supra* note 4. The Court finds that the ALJ properly explained his reasons for according little weight to Dr. Varavenkataraman's assessment.

In considering claimant's allegations of disability, the ALJ stated that he found claimant's allegations and testimony "less compelling" in light of the lack of opinions from treating or examining physicians indicating that Boltz is disabled. Tr. 30. "The Secretary is entitled to rely not only on what the record says, but also on what it does not say." *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983); *Berry v. Schweiker,* 675 F.2d 464, 468 (2d Cir. 1982) (per curiam). The ALJ stated that the "the claimant has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. For example, she has admitted an ability to take care of pets, perform light household chores, albeit at a slower pace, and prepare light meals. Furthermore, the claimant is self-sufficient in personal care, needs not reminders for personal needs or to take her medications, is capable of managing her money, drive, and can travel independently." *Id.* The ALJ did not err in concluding that Boltz's own testimony regarding her capabilities does not support a finding that Boltz was disabled under the SSA. *See Scritney*, 41 F. Supp. 3d at 304 ("Evidence that a claimant is capable of engaging in varied activities despite allegations of severe pain is supportive of a conclusion that her alleged symptoms are not disabling."); *see also*

*Rivera v. Harris,* 623 F.2d 212, 216 (2d Cir.1980). Based upon the record as a whole, the Court concludes that the ALJ properly considered Boltz's fibromyalgia in determining her RFC.

## CONCLUSION

For the reasons stated, the Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is DENIED, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 12) is GRANTED. Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: March 15, 2017
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court